OSKAR KRAUS, Plaintiff, *v.* ZIVNOSTENSKA BANKA, Defendant.

Supreme Court, Special Term, Queens County, June 19, 1946.

*Jacob Chaitkin* for plaintiff.

*Philip F. Farley* for defendant.

COLDEN, J. In 1938 and 1939, and prior to March 15, 1939, the plaintiff deposited in Prague, with the defendant, a banking corporation organized and doing business in the republic of Czechoslovakia, an aggregate of 319,647.10 Czechoslovakian crowns as well as certain securities. These funds and securities were deposited under contracts of deposit, the terms of which were acknowledged by the plaintiff as known to and binding upon him.

On March 15, 1939, Czechoslovakia was invaded by Germany; a separate puppet state of Slovakia was set up; certain parts of the republic were ceded and the remaining portion was set up as the German Protectorate of Bohemia and Moravia. At that time the plaintiff was a nonresident of Czechoslovakia.

In September, 1940, plaintiff instituted this action for moneys had and received and to recover the value of the securities. Jurisdiction was obtained by attaching the defendant's funds in New York. The defendant, in its answer, merely denied those portions of the amended complaint which concerned the effect of the Nazi occupation. It has admitted receiving plaintiff's funds and securities and the value thereof in dollars, and that it has failed to pay the plaintiff any part of his funds or to deliver to him any part of his securities or the value thereof.

Two affirmative defenses have been asserted. The first concerns the funds which are sought to be recovered in the plaintiff's first cause of action, and the second concerns the securities which are sought to be recovered by the plaintiff in his second cause of action. In the first defense it is alleged that the contracts, pursuant to which plaintiff deposited the funds with the defendant, were made in the city of Prague, and were there to be performed; that the laws in force at the time of the making of such contracts of deposit, and at all times thereafter, provided, and still provide, that a resident of Czechoslovakia is prohibited from making any payment to a nonresident of said country without a permit of the Foreign Exchange Control authorities; that the defendant is a resident of Czechoslovakia within the meaning of said laws, and the plaintiff and his assignors are nonresidents and no permit has been granted by the Foreign Exchange Control authorities to the defendant for any payment to the plaintiff or his assignors of any of the funds in question. The second defense is similar to the first, with the exception that it has reference to the transmittal of securities abroad.

The plaintiff has now moved for partial summary judgment in respect to the first cause of action pleaded in the amended complaint and severing the action so as to permit him to proceed to trial upon the second cause of action. The defendant has cross-moved for summary judgment in its favor on both the first and second causes of action pleaded in the amended complaint. In view of the cross motion plaintiff has requested summary judgment as to both causes of action pursuant to subdivision 8 of rule 113 of the Rules of Civil Practice.

Stripped of all superfluous matter, these motions present a question of law only. Both sides claim that they are entitled to summary judgment and no material issue of fact is presented so as to prevent a summary disposition.

It appears upon the record herein that for many years prior to the plaintiff's deposit of his funds and securities with the

defendant, Czechoslovakia enacted laws regulating its foreign exchange and prohibiting payment to nonresidents or payments abroad without the consent of its Foreign Exchange Control authorities. Such laws were in effect at the time that the plaintiff entered into the contracts in question with the defendant and are still in effect. In said contracts plaintiff agreed to be bound by the general terms of the bank, which were annexed thereto. Of particular significance is the following: "23. The place of performance and the place of payment for all engagements ensuing from business connections with us is the place of that office of our institution which has transacted the relative business with the customer, provided, of course, there is no other special arrangement. The bank is discharged from its pecuniary and any other obligation, as soon as it has given its fulfilment at the disposal of the customer in its offices and during its official hours. Unless we receive other instructions, we send cheques, bills of exchange, drafts, deposit-books and documents of all kinds, including insurance policies and documents covering goods, in registered uninsured letters at the expense and risk of the ordering party. We send monies and securities (bonds, stocks) at our discretion, either indicating their full value or having them covered by insurance, and this in all cases at the expense and risk of the ordering party. In the event of contests, if any, both parties submit to the jurisdiction of the Court of Justice materially competent according to the place of that office of our institution which has transacted the respective business with the customer, while the bank continues to have the right to institute an eventual action at the customer's common Court of Justice."

Thus, the defendant's office in the city of Prague, Czechoslovakia, is the place of performance and the place of payment agreed to by the parties themselves, and the liability, if any, flowing from said contracts is to be determined under the laws of Czechoslovakia. The fact that Czechoslovakia was in the hands of an invader at the time this action was commenced, does not give the plaintiff any different or additional rights. The status of the deposits has remained unchanged, and the prohibition against payments abroad, which existed continuously, still exists.

It is unnecessary to determine the validity of the laws decreed by the German invader. These decrees did not alter the existing exchange restrictions. If they were valid, plaintiff could collect the money only in Czechoslovakia; if they were invalid, the existing law of Czechoslovakia continued in full force and

effect. Moreover, number 21 of the general terms of the bank, to which plaintiff agreed, provides as follows: " If on account of events of vis major, war or strike of the staff, the bank would be compelled to stop entirely or partly the carrying on of its business activity, the bank is released for that period and for so long until the bank has again been brought into the normal course of activity from the fulfilment of its liabilities (obligations) and is not responsible for any damage which might arise from such suspension of its activity."

Just as the plaintiff was prevented by the events in Czechoslovakia from going there for the purpose of collecting the funds and securities due him, so was the defendant prevented by the invader from carrying out those normal activities, by the events which are now history and which were contemplated by the parties in the aforesaid paragraph 21.

In passing it may be stated that foreign exchange control to regulate the international flow of capital has been almost universally adopted in the present emergent period of history. The United Nations Monetary and Financial Conference held at Bretton Woods, New Hampshire, in July, 1944, to which both the United States and Czechoslovakia were parties, recognized the necessity for foreign exchange control to regulate the international flow of capital and provided for recognition of such controls. (See art. VI, § 1, subd. a; § 3; art. VIII, § 2, subd. b; art. XIV, § 2.)

It follows that under the terms of the deposit contracts signed by the plaintiff, and the exchange control laws of the Republic of Czechoslovakia then in force, the complaint fails to state any cause of action in favor of the plaintiff, and accordingly his motion for summary judgment must be denied and the cross motion of the defendant for summary judgment granted in all respects.

Settle order on notice.